**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

ILLINOIS EMCASCO INSURANCE COMPANY,

Plaintiff/Counterclaim Defendant,

v.

SOCORRO COBIAN *ex rel.* ESTATE OF JOSE N. COBIAN,

Defendant/Counterclaim Plaintiff,

-and-

SYSTEMS II TRANSPORT, INC. *et al.*,

Defendants.

No. 24 C 11020

Judge John F. Kness

**MEMORANDUM OPINION AND ORDER**

Defendant/Counterclaim Plaintiff Socorro Cobian moves (Dkt. 30) for judgment on the pleadings in this insurance coverage dispute, asserting that Illinois EMCASCO Insurance Company is required to indemnify Systems II Transport, Inc. for a wrongful death settlement. For the reasons that follow, the motion is denied.

## I. BACKGROUND

In August 2022, Jose Cobian was fatally injured in a collision between his bicycle and a tractor-trailer driven by Waldemar Buczak. (Dkt. 19-3 ¶ 10.) Roadhandler Express, Inc., (Roadhandler) owned the truck, and Systems II owned the trailer. (*Id.* ¶¶ 7–8.) Roadhandler and Systems II signed a contract that said

Roadhandler would remain the legal owner of the truck and would operate as an independent contractor on Systems II's behalf. (Dkt. 21-2 at 6.)

In February 2023, Systems II requested coverage from EMCASCO under its commercial general liability (CGL) and umbrella policies. (Dkt. 19 ¶ 19.) The CGL policy says that EMCASCO will cover "those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage,' " except when (as is relevant here) the injury "aris[es] out of the ownership, maintenance, use or entrustment to others of any aircraft, 'auto' or watercraft owned or operated by or rented or loaned to any insured." (Dkt. 19-2 at 11.) Under the CGL policy, an "auto" includes "[a] land motor vehicle, trailer, or semitrailer designed for travel on public roads." (*Id.* at 20.) This exclusion applies "even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured." (*Id.* at 11.) The parties refer to this provision as the "auto exclusion." In addition, the CGL policy requires Systems II to "notif[y]" EMCASCO of any accidents for which coverage is sought and any suits that may give rise to a claim "as soon as practicable." (*Id.* at 18, 22.)

Conversely, the umbrella policy covers any damages that remain after "the limits of" System II's " 'underlying insurance' have been exhausted." (Dkt. 19-3 at 8.) It does not, however, cover damages "arising out of the ownership, maintenance, or use of any 'auto' which is not a 'covered auto.' " (*Id.* at 10.) The term "covered auto" means "only those 'autos' to which 'underlying insurance' applies." (*Id.* at 22.) The term "underlying insurance" means "any policies of insurance listed in the

Declarations under the Schedule of 'underlying insurance.' " (*Id.* at 25.) The only policy listed in the Schedule of Underlying Insurance is the CGL policy. (*Id.* at 7.) In addition, the umbrella policy includes the same notice requirements as the CGL policy. (*Id.* at 19.)

EMCASCO denied coverage based on the auto exclusion. (Dkt. 19 ¶ 19.) EMCASCO noted that it was not aware of any lawsuit over the accident having been filed, but it asked Systems II to provide the pleadings should one be filed. (*Id.*)

Cobian filed an action over the accident on behalf of the decedent's estate in January 2024; that case (No. 24 C 381 (the Underlying Action)) was assigned to another judge in this District. (*Id.* ¶ 20.) In the Underlying Action, Cobian sued Buczak, Systems II, and Roadhandler for wrongful death, sought to impose vicarious and joint-venture liability, and requested punitive damages. (Dkt. 19-1.) Six months later, Systems II notified EMCASCO of the Underlying Action and renewed its demand for coverage. (Dkt. 19 ¶ 20.)

In early 2025, the parties to the Underlying Action reached a settlement that was approved by the judge overseeing the Underlying Action. (Dkt. 21 ¶ 34.) As the record of that action reflects, Systems II, Buczak, and Roadhandler agreed to be jointly and severally liable for $5 million in damages. (*Id.*) But although the defendants in the Underlying Action agreed to the $5,000,000 liability judgment, their primary insurer paid only $2,000,000: the maximum indemnity available under the two primary insurance policies. As additional consideration for the settlement,

Cobian agreed to accept an assignment of System II's rights under the policies EMCASCO issued to it. (*Id.*)

While the Underlying Action was still pending, EMCASCO filed this action for a declaration of no coverage against Systems II, Cobian, and Buczak. (Dkt. 19 at 22.) Cobian answered and counterclaimed for a declaration of coverage. (Dkt. 21 at 45–46.) Cobian now moves for judgment on the pleadings (Dkt. 30), and the motion has been fully briefed. (Dkt. 34; Dkt. 35.) EMCASCO does not seek a judgment based solely on the pleadings.

## II. LEGAL STANDARD

A court may enter judgment on the pleadings for the movant if, viewing the facts in the light most favorable to the nonmovant, there is no dispute of material fact on the face of the pleadings, and the movant is entitled to judgment as a matter of law. *See, e.g.*, *N. Ind. Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 452 (7th Cir. 1998). In resolving a motion for judgment on the pleadings, the Court may consider "the complaint, the answer, and any written instruments attached as exhibits." *Id.* In addition, a court may consider any matter of which it can take judicial notice. *United States v. Wood*, 925 F.2d 1580, 1582 (7th Cir. 1991).

## III. DISCUSSION

EMCASCO principally argues that the auto exclusion precludes judgment on the pleadings because it bars coverage under both the CGL and umbrella policies. In Illinois,[1] an insurance policy "is a contract, so the rules applicable to contract

[1] The parties brief this case under Illinois law, so the Court will follow their lead.

interpretation govern the interpretation of an insurance policy." *Thounsavath v. State Farm Mut. Auto. Ins. Co.*, 104 N.E.3d 1239, 1244 (Ill. 2018). A court's "primary function is to ascertain and give effect to the intention of the parties, as expressed in the policy language." *Id.* When the policy defines a term, courts will apply that definition, but when the term is not defined, the term's "dictionary definition" will control. *Gaudina v. State Farm Mut. Auto. Ins. Co.*, 8 N.E.3d 588, 594 (Ill. App. Ct. 2014) (quoting *Founders Ins. Co. v. Munoz*, 930 N.E.2d 999, 1005 (Ill. 2010)).

If the terms of an insurance policy "are clear and unambiguous, they must be enforced as written, unless doing so would violate public policy." *Thounsavath*, 104 N.E.3d at 1244. When the insurance company asserts that an exclusion bars coverage, it carries the burden of showing that the exclusion clearly and unambiguously applies. *Acuity v. M/I Homes of Chi., LLC*, 234 N.E.3d 97, 105 (Ill. 2023); *Pekin Ins. Co. v. Willett*, 704 N.E.2d 923, 925 (Ill. App. Ct. 1998).

Recall the relevant policy language. Excluded from coverage are injuries that "aris[e] out of the ownership, maintenance, use or entrustment to others of any aircraft, 'auto' or watercraft owned or operated by or rented or loaned to any insured." (Dkt. 19-2 at 11.) An "auto" under the policies includes "[a] land motor vehicle, trailer, or semitrailer designed for travel on public roads." (*Id.* at 20.) This exclusion applies "even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured." (*Id.* at 11.)

Potential issues of fact preclude granting judgment solely on the pleadings. In the Underlying Action, Cobian alleged that Systems II "is vicariously liable for" Buczak's "negligent conduct." (Dkt. 19-1 at 7.) But a defendant cannot be vicariously liable "for the actions of [its] independent contractors." *Lawlor v. N. Am. Corp. of Ill.*, 983 N.E.2d 414, 427 (Ill. 2012). In other words, Cobian took the position in the Underlying Action that Buczak was Systems II's employee.

Cobian's allegation that Systems II is vicariously liable for Buczak's conduct is incompatible with the current position that Systems II is entitled to indemnification under the relevant policies. Both policies preclude indemnification when the injury arises out of the use of a truck "operated by" Systems II. (Dkt. 19-2 at 11.) If Buczak was in fact Systems II's employee, then the truck was operated by Systems II because its employee (Buczak) was the driver. To be sure, the contract between Roadhandler and Systems II cuts against the idea that Buczak was Systems II's employee, in that it expressly states that Roadhandler wanted to "operate [Buczak's] vehicles . . . as an independent contractor." (Dkt. 21-1 at 1.)

In the Court's view, the pleadings alone cannot resolve whether Buczak was Systems II's employee. As the courts of Illinois have explained, the terms of a services contract are "not necessarily . . . conclusive" on whether the parties have an employer/employee relationship or an independent-contractor/client relationship. *Manahan v. Daily News-Tribune*, 365 N.E.2d 1045, 1049 (Ill. App. Ct. 1977). By the same token, the Underlying Action resulted in no conclusive factual findings on the relationship between Buczak and Systems II because a settlement in litigation does

not carry issue-preclusive effect. *Arizona v. California*, 530 U.S. 392, 414 (2000). Further development of the relationship between Buczak, Roadhandler, and Systems II thus appears necessary to a reasoned determination of the coverage question at issue.

Factual development is also necessary to resolve EMCASCO's late-notice claim. In Illinois, an insurance company can be required to demonstrate that it was prejudiced by any failure to comply with an insurance policy's notice provision. *Am. All. Cas. Co. v. Aguirre*, 2026 IL App (1st) 242194, ¶ 15. And the notice provision in this policy requires that the policyholder "[c]ooperate with" the insurance company "in the investigation or settlement of the claim" by the injured party. (Dkt. 19-2 at 18.) Cooperation clauses are designed "to prevent collusion between the insured and the injured." *M.F.A. Mut. Ins. Co. v. Cheek*, 363 N.E.2d 809, 811 (Ill. 1977).

Systems II, which had a potential defense to the Underlying Action by arguing that Buczak was an independent contractor, agreed to be jointly and severally liable to Cobian for the *entire settlement amount*. (*See* 24 C 381, Dkt. 54-2.) These facts at least suggest the specter of collusion, which would violate the notice provision of the policy. Such collusion would, of course, be prejudicial given Cobian's apparent change in position from the Underlying Action regarding Buczak's employment status, which may have deprived EMCASCO of the opportunity to mitigate any potential damages in the Underlying Action.

## IV. CONCLUSION

Defendant's motion for judgment on the pleadings (Dkt. 30) is denied.

SO ORDERED in No. 24 C 11020.

Date: September 16, 2026

JOHN F. KNESS
United States District Judge